Ms. Slaven? Or is that right? Slaven. Good morning. May it please the Court. My name is Emily Slaven and along with my co-counsel, Jackson Tuff, I represent Appellant, the official committee of unsecured creditors of Walker County Hospital Corporation. I'll simply refer to that long name as the committee today. We reserved three minutes for rebuttal. The committee has asked this Court to decide whether the amendment order, which was entered on less than 24 hours notice to the committee and wiped out key features of an authorized sale that the committee had negotiated, is a sale order that authorized properly a Section 363B sale under the Bankruptcy Code, or whether it's a Chapter 11 plan of adjustment. The district court held that it was both. The committee contends that it is neither. There are three key reasons why the lower court's dismissal of the committee's appeal from the bankruptcy court's hastily entered amendment order was an error. First, the committee's appeal was not equitably moot. As no Chapter 11 plan has been even proposed, much less approved, consummated, or substantially consummated in the underlying bankruptcy case, which remains ongoing to this day. Second, the committee appealed the amendment order, not the sale order. The sale order was issued under Section 363B of the Bankruptcy Code after notice and a hearing. The amendment order was not and it did not comply in substance with the requirements necessary for the court to authorize sales under that section. The appeal was therefore not statutorily moot pursuant to Section 363M. Finally, the district court could have fashioned a remedy to redress the committee's injury without undoing any authorized Section 363 sale. It could have declared that the bankruptcy court had erred by entering the amendment order in deprivation of the committee's due process rights, without engaging in any fact finding, and without affording the committee any opportunity to even respond to the debtor's motion asking for entry of that order. And it could have remanded the order to the bankruptcy court for a damages determination. What do you mean it didn't give the district court, I mean it didn't give the counsel an opportunity? The fact—sorry, Your Honor, go ahead. It listened to counsel. It was a telephone call. I mean, it gave them an opportunity to say something, but it didn't say anything. The facts leading up to the entry of the amendment order are—it becomes very evident that the committee wasn't afforded any reasonable opportunity to mount a meaningful objection when you look at the record. Going back to entry of the sale order, which took place in December of 2019, Your Honor, the committee was party to negotiations for a matter of months with the debtor and the buyers, and the committee, the debtor, and the buyers reached an agreed term. But the opportunity, that's what I'm—I'm just saying that he had the opportunity. It may have been a brief opportunity, and it may have been one under pressure, but he had the opportunity to do something, and he did nothing. I understand your point, Your Honor, but the opportunity has to be reasonable under the relief that the debtor sought. The debtor presented an emergency motion— But isn't that why—isn't that why parties in bankruptcy seek stays? Pardon? Isn't that why you would seek a stay? That's correct, Your Honor, but the way that the—that the order was—the order was entered, the debtor filed the emergency motion on the night of February 26, 2020. The emergency motion did not contain any factual evidence in support of the bald statements contained in the motion. For instance, the motion said that the relief was necessary to preserve the sale of the hospital going through, that the relief preserved the economics of the sale that was originally agreed upon by the three parties—the committee, the buyers, and the debtor. There was no evidence supporting those bald statements. The motion had to have been—because it was requesting emergency relief, which shortens the amount of notice provided under the bankruptcy rules, counsel was required to have certified that motion for its accuracy under the local bankruptcy rules, and they didn't do so, and these are all just procedural protections that are— But you knew that the amended sale order would prejudice the committee. That's why you objected to it. Could you say that again, Your Honor? So you knew that the committee's rights were implicated by this request for—the emergency request for the amendment, right, for the amended sale order. That's why you objected. Of course. So if you didn't think you had enough time to mount a proper objection for any of the reasons you're giving today or any other reasons, you could have said, Judge Jones, we need a stay because our rights are going to be implicated under 363M. Right? So you could have—I mean, you clearly understood that. So I guess that's the question is why not just say we need a stay to suss all this out? Certainly. Well, there are requirements before the stay would be entered, and in addition, I mean, the committee did make a reasonable effort by notifying the clerk that it intended to seek a stay and to seek to object to the revised order. The revised order not only didn't mention the numbers 363 on them, that was the least of the problem. The problem was that it changed material terms with no factual support, requested emergency relief— Yes. —to obtain a stay or at least try to obtain a stay. So the next morning, it was filed on February 26, 2020. The call went in. By the morning of February 27, 2020, the buyers filed a joinder that was similarly devoid of any factual support, and that order was entered within a matter of hours, and the sale closed that very same day. So this truncated notice period is really the crux of the committee's appeal that went up to the district court, whether that truncated period provided the committee with notice reasonably calculated under the circumstances to seek a stay, and our contention is that it did not. How long was it before you sought a stay formally? The committee did not seek a stay because the sale had already closed the same day the order was entered. Okay, so when was the first time that you made an objection to set aside the sale or whatever motion it was you made after the sale had occurred? The committee timely filed its appeal with the district court. And how long ago was that? I mean, how long was the space between the time of the sale and the time that you filed an appeal? I believe it was within 30 days, but I have to go back to the record to check, but it was a timely appeal, and no parties contested that it was not. But not any kind of appeal for an emergency motion or emergency action on the part of the district court? The committee wasn't required by the rules to file a motion for relief from judgment. That's a permissive argument, and it made a decision to seek its appellate's rights, which it is permitted to do under the rules. Can we go back to the difference between the sale order and the amended sale order? I realize one of your principal arguments, you're only appealing the amendment. We agree, though, I guess everyone agrees, that the original order was a 363B sale order. And so the only dispute is that the amendment didn't say sale order Roman II or sale order amendment or something? It didn't have language like that? The language on the amendment order is the least of the committee's problems with the amendment order. The sale order was issued after negotiations between the committee, the buyers, and the debtor. The committee was a party in interest in the bankruptcy. It had a say in the terms on which the debtor's property would be sold. Its constituents are the unsecured creditors of the debtor. After the negotiations, the committee, the buyers, and the debtor reached a settlement agreement. It was memorialized in the settlement term sheet. The bankruptcy court held a hearing, took evidence on the proposed sale under the terms that were settled upon by these three different parties, and entered an order saying that the sale was reasonable. And so the terms of the sale order, the committee did not object to. The committee, in fact, waived rights that it had, it believed, against one of the buyers, the Walker County Hospital District, in exchange for more favorable terms under that bid. And so the sale order was issued in compliance with Section 363B of the Bankruptcy Code, which on its face authorizes the court to allow the debtor to sell its property outside the ordinary course of business following, quote, notice and a hearing. The notice leading up to entry of the sale order was sufficient to meet that statutory provision, and had the sale proceeded on that terms, 363M would certainly apply. But the amendment order simply contrasts the way the sale order was entered with the way the amendment order was entered here. At the eve of sale, the buyers demanded changes that the committee contends, but was never able to argue to the bankruptcy court, were material, and they changed key terms of the buyer's bid. And so on the eve of sale, the buyers demand that the debtor make a change purportedly due to this receipt of Medicaid payment that came in to the debtor. Under the terms of the sale order, that Medicaid payment was to go to the debtor's estate if received before the closing of sale, and it was to go towards the buyers if it was received after, because the sale, there were delays in closing the sale. It came in before. And so the buyer made a request to the debtor to change materially the terms of the bid. Here's the thing I'm getting hung up on. So I understand why all of this, I understand why this hurts your client, that makes perfect sense to me. I understand also how all of this implicates your due process argument, because all these last minute changes, it's all done with no notice, and oh my gosh, this is terrible. I understand all of that. What I don't get is how the amendment isn't also a sale order, because we all agree that the first thing is a 363B order that has the protections of 363M, that all makes sense. The second order is just an order amending the first thing in ways I get hurts the committee in the committee's view. So I understand that, but it still strikes me that they're materially identical because they're talking about the same proceedings, the same sale, the same, all of the same underlying transaction, just changing the terms in ways that hurt your client and that you would object to. So how is the second thing not a 363B sale order just like the first thing is? Had the committee been afforded the opportunity to evaluate before the judge, engage in fact finding, evaluate the terms of the amendment order, then certainly 363B would apply. But these are material, the committee contends are material changes. The committee specifically negotiated for an increase bid from the buyers for the cash for the debtor's account receivable. That negotiation was more than eviscerated by this revised deal. The committee specifically negotiated to cap the buyer's post-petition rent claim against the debtor. That was also specifically completely wiped out by these revised terms. And the committee didn't have any opportunity to evaluate the revised terms. There wasn't even a piece of evidence submitted to the court even to consider supporting the contentions contained in the emergency request for relief that the hospital sale wouldn't have gone through and that these terms were material unnecessary. And so these procedural protections are embedded in the statute to allow creditors the opportunity to test the terms of the bid. And that's what didn't happen here. The terms were materially different and they were completely untested by the court and the committee was afforded no opportunity to challenge them. By the way, how much money is involved in this, the difference between you and the debtor and yourself? So there is not, because of the procedural deficiencies and how the transaction occurred, the debtor, the committee wasn't able to present evidence on the record as to the difference. But the committee estimates it to be in the range of about an $850,000 difference that would have gone to the debtor and flowed to the benefit of the committee's constituents who are the unsecured creditors of the debtor's estate. I would also point Your Honor's attention to the Bloomer decision that we cite in our briefing, as well as the Excel decision, the Appleys. Given all the circumstances, I don't see that you are really challenging the urgency and underlying reasons for the expeditious treatment of the sale. And so if that sale had not been completed when it did occur, the value of the assets would have tanked. Isn't that true? There is no support in the record, other than the bald statements contained in the emergency motion, that that's true. $850,000 is if everything had remained good and viable as you would hope, but you don't challenge the fact that if the sale had not occurred when it occurred, there would have been essentially a total diminishing of the value of the property. The committee, there's no evidence in the record that we were able to mount challenging that contention because it was simply a statement of counsel made in an emergency motion devoid of any facts. Certainly, the committee would have challenged the terms of the sale. It would have tested whether those amendments were necessary for the sale to proceed as the appellees, the buyers, have contended here. But we had no opportunity to do that before the bankruptcy court, and there's simply no evidence in the record supporting the fact that that amendment was necessary to preserve the value of the hospital or the sale. I mean, I guess there is evidence of it, and that is at least their statements that are true. Well, the bankruptcy rules, Rule 9014 in particular, requires there to be some fact-finding engaged by the bankruptcy court, and a statement contained, not a certified statement, no supporting declarations, no expert testimony, that the material terms of the sale that had been agreed upon by all three parties were necessary for the sale to close. That's certainly a big factual leap to make on the word of counsel alone with no evidence in front of the bankruptcy court, and that's really the crux of the committee's appeal that it has not been heard on since. This is the first time the committee has had the opportunity to discuss this transaction since December of 2019. That was the last time the committee appeared before a judge to discuss this sale, which sold a material portion of the debtor's estate and has a huge impact on the committee's constituents. In other cases of this nature, have you sought a stay before in a 363M situation? Have you filed for a stay for the sale? There simply was not time for the committee . . . I understand that, but in other cases, have you done that? I personally have not, but I'm sure my colleague, Jackson Took, has. I'm sure other bankruptcy professionals have. Just for my own information, what is the standard for obtaining a stay under those circumstances? Your Honor, I'm not 100% sure on the standard, and I don't want to misrepresent that to the court, but suffice it to say that there is a factual showing necessary in order to seek a stay. I also would add quickly that I believe my time is up, so I will not barring any extra questions. Thank you. You will have rebuttal time. Thank you. All right. Thank you very much. Mr. Willett. No relation to our brother, Willett? No, I regret none that I'm aware of. He dresses like you do sometimes. Well, good morning, Judge Duncan, and may it please the court. I think it might be helpful to step back for a moment and consider what the world looked like to Judge Jones. When this happened, bankruptcy courts face problems that are practical, human, and in this case, urgent. The urgency was that the hospital was out of money. For a month, it had been carried by its landlord day to day. And on the 25th of February, it came to pass, everyone learned, that a $1.2 million receivable, which under the original sale documentation that my friend refers to, was always to be for the account of the buyer. Always. It was never to be for the account of the seller. This is Medicaid payment? Yes, Your Honor. All of a sudden, it's been paid. It's been reduced to cash. They're not buying cash. It's no longer for the account of the seller. And the lender won't finance. The original sale deal was always subject to financing. So there is no deal on February 25th. Now, my friend had the chronology slightly wrong. What happens is, early in the morning on February 26th, having worked all night, as bankruptcy lawyers do, committees do as well, the debtor files this emergency motion and says, we had this problem that we've learned of yesterday, and here's the solution. The solution is that the $1.2 million account, which can no longer be for the account of the buyer, is going to become for the account of the buyer by changing some other terms. We're going to give them an administrative rent claim and change the cash. That's essentially what happens. So, Judge Oldham, to go to your point, actually, if the committee had prevailed below or would be getting a windfall, would be getting the $850,000 twice. Now, with this kind of emergency, with the fourth largest employer in a rural county, the only acute care facility for 50 miles, and no money, debtor's counsel is fiduciaries telling the judge in the emergency order, we're going to have to shut down. So, with this kind of emergency, Congress gave Judge Jones two important tools. One is 363M, and it's important to get away from the way that my friends want to phrase that statute in their brief to what it actually says. It refers to any authorization of a sale. If a judge authorizes a debtor to sell, you are in 363M. And while review is possible, no order from an appellate court can affect the validity of the sale. So, what is a creditor, what are the creditors supposed to do in this set of circumstances? So, the timeframe, I don't know if this is characteristic for these sorts of sale orders, but it is obviously very compressed. So, you have the first, the emergency motion for the amendment is filed at 842 in the morning on the 26th, and it's granted 24 hours later, like 9 a.m. roughly on the 27th. Does the stay, if the creditors had wanted to file a stay, would they have had to file in that 24-hour window? Well, they had to get a stay, had to actually get a stay. Yeah, so that's my next question. And, you know, there might be a different case if they had actually asked for a stay and run out of time. They have to ask for a stay and then get a stay before the deal closes. Now, a notice is filed on the 28th, I believe it's the 28th, saying, we closed as of midnight yesterday. Now, here's the timeline. That emergency motion, two things about it. First of all, it recites that the debtor was unable to obtain the consent of the committee. So, the committee knows about the motion before it's filed. Probably not long, because nobody knew about the disaster before the previous day. But they know about it, and they have time to make a phone call to chambers, at which, by the way, there's nothing in the record that says they were going to ask for a stay. They wanted time to negotiate. There is no time, because the hospital's out of money. So, what they could have done is filed a two-page objection, and most important, asked for a hearing. On the 26th? Yes. They never asked for a hearing. And suppose, just do this hypothetical with me, because I want to understand, like Judge Duncan asked earlier, I want to understand the procedure for how this works. You file, the creditors file on the 26th, some say, like, noon, right? They've had the motion now for three and a half hours. They file at noon on the 26th. They say, I need a hearing. I need a stay. I object. All of the terms are different. This is terrible. It hurts the committee. Judge Jones, let's just hypothesize together that Judge Jones denies that at 5 p.m. on that day. What do they do then? Can they go to the district court? Can they come to us? How are they supposed to protect their rights and get the stay? If they denied the stay, they would go on an emergency basis to the district court, which sits as an appellate court in the first instance. But here's what would have really happened. Had they asked for a hearing, they would have gotten at least a telephonic hearing. And Judge Jones, I can guarantee, would have wanted to know the answer to two questions. One, how do we save this hospital if there's some better way than this deal? And two, what's wrong with this? They're telling me that it's the same economics. They've never explained in their briefs to this court or any court how this isn't a windfall. Those things couldn't happen because they didn't object and they didn't ask for a hearing. Now, I know that court in which I mainly live is a very different court than this court. But I can't tell you how many briefs from Skadden Arps I've had at 10.30 at night and have to go to court the next morning and deal with it. It's just the nature of distress. Now, this isn't some random creditor who's bewildered by the process. These are seasoned professionals. They're represented by very skilled attorneys. They know what to do. My submission, my suggestion is that they knew there was no alternative. That's why they didn't file an objection. But that's speculation. It's not in the record. It's funny. In the first hearing, we were listening with great interest as to what do we require of a prisoner in order to protect rights of liberty before time runs. But here we have extremely competent professionals who know the rules of the game in bankruptcy. They know how 102 works. And, as my friend told you, they had been intimately inside this deal since December. So they knew how important this financing arrangement was. There's no reason, there's no explanation for them not protecting their record, not seeking to explain to the bankruptcy judge how there was any alternative. The stay is the bright line. And they didn't even seek one. Now, in the reply brief, and I think we heard this morning, well, we didn't really have time. The reply brief puts it, we didn't have time for a fulsome objection. They didn't need a fulsome objection. I often annoy my partners and associates by begging them to look that word up in the dictionary before they use it because it doesn't mean what people think it means when they use it. But we didn't need a Fifth Circuit brief. We didn't need a full brief. They just need to explain to Judge Jones a practical alternative to the situation that he found himself in. Now, I think Judge Haynen in the district court is being a little unfairly treated with this criticism of the equitable estoppel argument because they kept telling him, we're not trying to upset the sale. They kept dancing around that. And Judge Jolly, in response to your question, we heard what they want. They want $850,000 from my client, the buyer. Imagine the conversations that will happen if you were to grant that relief. Hey, guys, don't worry. You can go to the bankruptcy court and bid for assets. And the deal will be good even though there are courts involved. It'll be solid. Nothing will happen to you except 15 months later you might be in the Fifth Circuit being asked for $850,000 more dollars. As your colleague Judge Costa said in the CHIP building, the whole trade that Congress made was, if we're going to get these dollars to the distress table, we have to rely on the judgment, I think he put it, the in-the-moment judgment of the bankruptcy judge. And if we're going to rely on the in-the-moment judgment of the bankruptcy judge, we have to also rely on seasoned professionals reacting promptly. That didn't happen here. In any event, the reason Judge Haynen went to equitable estoppel, I think, as his lead argument, was that they kept telling him we're not actually trying to upset the sale. So it sounded like maybe it's outside Section 363. But he looked at the collective situation he was faced with. And while it's true that equitable estoppel is applied almost always in planned cases, this court has applied it in other circumstances, too. In the Hillel decision, you had a fairly complicated settlement. It wasn't even a Chapter 11 case. It was a Chapter 7 case involving a trustee. And this court rejected an argument that equitable estoppel wouldn't apply because there was no plan. Whatever knocks the props out of a complex agreement, as the Ninth Circuit put it a long time ago, can be subject to equitable estoppel. Now, you don't have to reach that to decide this case. 363M disposes of the case entirely because what my friend wants to call an amendment order is an authorization to sell. It says that. It says the debtor is authorized to sell to the successful bidder. And the debtor did sell to the successful bidder. So we are precisely inside of Section 363M. I don't think we have to dwell very long on the due process argument. It's worth reflecting that the appellant in this case, the creditors' committee, is created by the same statute that creates Section 363 and Section 102. It's created by the bankruptcy code itself as an advocate for creditors. And in cases like this, an advocate to enhance the estate in which creditors will participate. It's not a specific creditor that has an ownership interest in property or lien or a security interest that might give rise to an interest of constitutional dimension. And they haven't pointed to any case that recognized a due process violation where a creditors' committee is complaining about a sale or any similar transaction. You have said in Shaw, the Federal Circuit in Wyatt, that expectations are not enough. You have to have a property interest to be inside the Fifth Amendment here. Otherwise, I don't think I have more to say unless there are questions. Thank you, counsel. Thank you. Ms. Slavin, you have three minutes for rebuttal. I'd like to address briefly three points. The first, my opposing counsel has referenced the district court's invocation of the equitable mootness doctrine. Equitable mootness in the Fifth Circuit is applied very narrowly to plans of confirmation, primarily. And orders that impact plans of confirmation under Section 1129 of Bankruptcy Code. The district court, sua sponte, applied equitable mootness in this case. And it did so in a way that reflects a clear error in the court's terminology. The court called the amendment order a plan. It's very clearly not a plan. The court said that the buyers were not parties to the appeal because that's a factor in the equitable mootness determination. That just plainly is belied by the heading and the signature block in the motion to dismiss the appeal. So there were clear errors here. This is not the type of case where an equitable mootness determination should be made, where the court would be unscrambling an egg. This is one transaction between two parties. The second point I would like to address is the claim that the committee consisted of seasoned professionals and that the committee did not act with due expediency under the circumstances. The committee exercised its most expeditious action in this case. The committee told the clerk it intended to file an objection. The committee consists of five different members. And so getting authority from all five members takes some time. The due process analysis, the third point I would like to address, is whether or not the committee has rights under the due process clause. The committee is a fiduciary that represents all of the unsecured creditors in the estate. And the Bloomer case has a very nice discussion of this, saying that even unsecured creditors are afforded procedural due process under the bankruptcy clause, under the bankruptcy rules, and under the Constitution. And procedural due process requires reasonable notice and an opportunity to mount an objection. And the committee posits that the span of 24 hours here was just not enough time, especially given the fact that there was no factual support supporting the amendment order and the emergency motion. And for that reason, the committee respectfully requests that this court vacate the district court order and remand to the district court for determination on the merits. Thank you, counsel. Thank you for a well-argued presentation on both sides. I'll take the case under submission. What is the will of the judges? Should we take a break?